May it please the Court, Bernard Rosen on behalf of the appellant Jaime Price. Mr. Price, along with four other young men, was indicted for crimes committed allegedly against the United States. Counsel, it's been about 20 years since I had a quorum nobis. They're really rare, and the citation is always Tahirah Bayashi, one of the most outrageous Supreme Court decisions in American history. What's extraordinary enough for the writ here? The fact that three co-defendants, one of whom did go to trial, put the government to its proof, and this Court held that the government's proof was insufficient, that it failed to establish a jurisdictional nexus. That in itself may not be particularly extraordinary, but what the government next did, I submit, makes it a little more out of the ordinary. It went before the district court on its own initiative and dismissed the case against two other co-defendants who have never been apprehended, never stood before a court to confess their guilt, never shown their ability to serve their sentence and attempt to now lead a law-abiding life, a fruitful life. What is unjust about now permitting Mr. Price that same benefit? Because, again, to go back to an earlier case, the Morgan case in the Supreme Court, the remedy is extraordinary and should only be allowed under compelling circumstances to achieve justice. So your argument is that because these other gentlemen got off, that he should get the same treatment? Is that the extraordinary circumstance? Part. The other side of that would be perhaps asking it in the double negative, what would be unjust about permitting that relief to Mr. Price? Well, he stood before the court and admitted to the crime. So did Mr. Perry in the Blackledge case. And then he found out it wasn't such a good deal, and some months later came back before the court and the U.S. Supreme Court said, oh, yes, Mr. Perry can now attack his plea of guilty. And, again, it's what this Court has described, I think, most recently in the Garcia-Valenzuela case, which I cited in the brief. There's the Blackledge exception and the Vroese limitation. Vroese, of course, is termed a limitation, not an overruling. And, therefore, you get, as I argued in the briefs, if the facts and the procedural history of appellate opinions matter, what does this case closely compare to? Blackledge or Vroese? You can correct me if I'm wrong, but I thought what happened was the other case, was it Mr. Hung, Mr. Wong? Yes, yes. That was the lead defendant. That he, after he went to trial, his case went up on appeal just about the time we had an opinion called Lynch 1. I'll just use Lynch 1 loosely. And he got the benefit of that three-judge panel opinion, if I'm not mistaken. Yes. And then Lynch 1 goes en banc, and the Court changes the rules again, which I don't think Mr. Wong benefited under the three-judge panel, under the en banc opinion. Is that correct? I will concede that. My point, as I brought it up. So there's just this little window where the three-judge panel opinion that was, had been filed resulted in the benefit to Mr. Wong. And the other two. And the other two defendants. And the other two defendants, to which my answers at one in the brief were, that is not the position that the government took before the district court. And number two. Oh, no, no. I understand that. And number two, my question would be, so what? What would be unjust still about allowing the benefit of that now-closed window? If the window is now closed, the government is even less damaged. It would be precedent to no other human being under the jurisdiction of this circuit with the possible exception of the fifth co-defendant, if he could make the compelling showing that Mr. Price has. I think you just said that it's an injustice that if a mistake is made in favor of three defendants, that the same mistake is not made in favor of the fourth. Because what Lynch 3 signifies is that Lynch 2 was thought by the court to be a mistake. I put it in terms of a double negative. What would be unjust about allowing Mr. Price the same benefit that the other two co-defendants have, given what he has shown he has been capable of doing? Of a mistake. Whether a mistake or not, a court ruled, this court ruled at one point that the three co-defendants' conviction could not stand. He's chasing some people who are running, and he hears from the dispatcher, they're all wearing red shirts. And the first one's wearing a blue shirt, he lets him go. Second one's wearing a blue shirt, he lets him go. Third one's wearing a blue shirt, he lets him go. And then he hears on his earpiece, no, no, I was wrong, they're not wearing red shirts, they're wearing blue shirts. And the fourth one, he catches up to him, he's wearing a blue shirt, he nails him. That's, I think, the nature of the injustice you're talking about. Gee, the other guys got away with it because the dispatcher said red when she should have said blue, and my guy just had the bad luck of getting caught after the cop heard the correct description from the dispatcher. With all due respect, I disagree. This is a legal conclusion. Mr. Perry pled guilty and months later found out he did not get the good deal that he thought he had. He thought he was going to get time served. Months later he finds out he's going to get a consecutive sentence. Then he comes back. Tell me what happened. I was thinking of what is analogous to this where there would be some authority. And as I recall, some years ago there was a Supreme Court decision called Bailey. It used to be everybody got the bump for a firearm in a particular type of case. And then the Supreme Court in Bailey said, no, it has to be used, not just possessed, to get the bump. And all these people who had just possessed it and not used it were out in the cold because they'd already pleaded guilty when they thought the crime was you got the bump if you just possessed it. Do you remember the case I mean? Not only did I remember it. I was just citing it in a different case in a different brief a few weeks ago. Is there any authority about the unfairness of all those people who pleaded guilty to something that turned out not to be the crime they pleaded guilty to? I don't know if that was a dicta or if someone has actually sought a petition for rid of a recorum nobis in any of those cases. We have filed and are seeking an extraordinary relief to achieve justice. And in the context of the other three co-defendants, I do not, again, to put it in a double negative, I don't see what's unjust about permitting Mr. Price to benefit from the same window. And as I said, if it's only a window that is no longer open, the government has nothing more to worry about. Ginsburg. Oh, go ahead. Judge Christensen. Counsel, in order to support the issuance of this or the granting of this writ, as you know, there's a number of factors. Why wasn't the conviction attacked earlier? That is explained in primarily my declaration that I submitted with the writ. Mr. Price apparently wrote to me at a much earlier time. I had no recollection of the case. I found his letter in the file and have no explanation as to why I did not respond. I twice, however, invited both the district court or the government to seek the appointment of other counsel if they thought that would be a material issue. And the adverse consequences that you're asserting are that he is unable to do this, that the conviction impairs his ability to get employment, obvious things. Under ordinary circumstances. Because he's discharged his sentence completely. Absolutely. And under ordinary circumstances, I would have said, sorry, Mr. Price, but good luck in the future. These circumstances, I thought, were out of the ordinary. The question is, does anyone else beside myself feel that they are compelling? So the district court had a slightly different approach. She relied heavily on our opinion in Matthews. Matthews, correct. And when you enter a plea of guilty and you admit all the facts that are charged in the indictment or in the indictment, then that's it. You can't go back and challenge that. What's wrong with that? This court has distinguished Matthews on several occasions, the most recent being, I think, Garcia Valenzuela, and has also said the line is not clear. Matthews involves the opening of a record, and as I've argued in the brief, he wouldn't have been able to establish anything anyway. It was a question of where the bones of a murder victim had been found, and no one could assert with any degree of certainty that that was, in fact, his murder victim. It wouldn't have amounted to anything. It was a much closer procedural record to the Gross case, where those defendants are trying to bring in the record from an entirely different case. I'm trying to do what Mr. Perry did in the Blackwell case. Let me ask you this. Were the facts that he admitted to when he entered his plea, were they different or identical to the facts the government proved up in the case that went to trial? I have no idea. All I can say is that the government, again, did not raise that as an issue. The only way we would know that is by going to look, take a look at the trial transcript in Mr. Wong's case or Hong's case, whatever. I did not, and I'm not sure that the government did before. We will raise that issue before the district court. Why not? I'll give you a minute. You're over your time, but I'll give you a minute for rebuttal. Let's hear from the government. May it please the Court. Wilson Park on behalf of the United States. This Court should affirm the district court's denial of defendant's quorum nobis petition for three reasons. First, under the general rule established by the United States Supreme Court, defendant is barred from collaterally attacking his voluntary and intelligent guilty pleas, and the exception to that general rule does not apply to save defendant's claim. Second, under binding Ninth Circuit precedent, the Matthews case, defendant conclusively admitted all of the factual allegations contained in the indictment, including those that formed the basis for Hobbs Act jurisdiction. And third, even apart from his inability to challenge his guilty pleas, the entire basis for the defendant's appeal is flawed. The reversal of co-defendant Jimmy Hung's conviction was based on an incorrect state of the law that this Court corrected long before the defendant filed his quorum nobis petition. Now, I'd first like to address the general rule barring collateral attacks on guilty pleas. Could you please help me on something a little more general that's bothering me? Yes, Your Honor. The way it looks to me from the extremely limited amount that I know about the case is that Price is a guy who committed the crime. It was a righteous conviction. No problem with it. No problem with the plea. Since then, everybody else who did it with him, it was a conspiracy, and all the other guys got off one way or another. One threw a judicial mistake, basically, that had not yet been corrected, and the other two because the cases were dismissed before they even got caught on account of that mistake. Price is left holding the bag, and now he's a good citizen. He's trying to do the right thing. He's trying to earn an honest living, and he can't get anywhere because of this old conviction. And the question is, can his lawyer find some way to break the thing open? Do I have an accurate picture? That's accurate, Your Honor, with one correction. There was one other defendant who was convicted and sentenced for his crime, Luis Porres, who was one of the individuals who actually participated. I think he got less time, right? As I stand here, I don't know the answer to that question, but I do know that he received some sentence. But he did get some time. Yes, Your Honor. Mr. Hung was in the right place at the right time, and he received a huge windfall. But there's no reason under the law, particularly under the law of quorum nobis, to give that same windfall to the defendant. There's no injustice when a man who committed the crime admitted guilt, who is legally and factually guilty of that crime, to be punished for that crime. This is not a case involving a man who was convicted for a crime and served a sentence for a crime that he did not commit. It's undisputed that he and Mr. Hung and the others all participated in this violent and brutal crime. Why did the government dismiss the charges against the other two? That I couldn't figure out. I also don't know the answer to that question, Your Honor. Why would they do that? The prosecutor that charged that case and tried the case left the office over a decade ago. So anything I would offer now would be speculation to some extent. Did you call him up and ask? I did not, Your Honor. Or reach out, as Californians seem to say. I did not, Your Honor. But given that this Court had just ruled in the Lynch one case, I'm sorry, in the Hung case, that there was no jurisdiction for Hung's conviction, Hobbs Act jurisdiction, I could only speculate that the office, for prudential reasons, wouldn't then pursue indictments against two other individuals who had not been apprehended. So the timing of the dismissals was between Lynch two and Lynch three? Yes, Your Honor. It was the dismissals happened six months after the Hung reversal. So under those circumstances, I think it was prudential for the office to not pursue these indictments in the face of this Ninth Circuit opinion in the Hung case and in Lynch one. I would just note that even at that time ---- Let me ask you, so what was different about, was there anything different about what Price admitted to in his plea than what the government proved up at Hung's trial? Unfortunately, Your Honor, due to the age of the plea, that transcript was no longer available. So the government relied on the indictment and the Matthews case to establish that what the defendant admitted was what was in the indictment. But the transcript itself was not available because of its age. But the government did attempt to obtain that transcript. I mean, it's kind of curious. I mean, the government could always ask the court to vacate the conviction. It could have if it was the same. That's true, Your Honor. But again, I think at that point in time, Matthews was still good law and is still good law today. And under Matthews, when a defendant pleads guilty, he is admitting conclusively all of the allegations contained in the indictment. And this indictment clearly has allegations that establish Hobbs Act jurisdiction, that the defendant was part of a conspiracy whose purpose was to obstruct ---- Well, these guys could have been prosecuted in Las Vegas or Nevada, right? That's correct, Your Honor. What we were saying for a while was that the Hobbs Act is not made for routine robberies and other crimes that use your ordinary common law crimes as codified in the various states. Yes, that's true, Your Honor. And again, I don't know why the AUSA who indicted this case decided to pursue it federally. I don't know why it wasn't left to the state. Were these other defendants prosecuted? Do you know? I also don't know the answer to that question. Then after a while, we said, no, no, we were wrong when we said that. Actually, you can use the Hobbs Act for routine robberies when something about it crosses state lines. That's correct. If the court is referring to the third lynch opinion, at that point, a different lynch one's endorsement or unqualified endorsement of the Collins case, which was the Fifth Circuit case, and reverted back in cases where there is a direct effect on interstate commerce, where there undisputedly was in this case, that in those cases were back to the Acheson test, which is a de minimis effect on interstate commerce. And I don't think that's being disputed here, that there was a de minimis effect. What was the window of time from lynch one to lynch three? Lynch two was the district court opinion on the event. Or lynch two, I'm sorry, lynch two and lynch three. What was, what are we talking about? It was approximately a two-year window of time. Okay.  Any other questions? None. Thank you, counsel. Thank you very much, your honors. I'll give you a minute for rebuttal. Thank you, your honors, but I'd only be repeating myself. I'll submit it. Thank you. All right. Thank you. Thank you. Matter submitted.
judges: Christensen, Kleinfeld, Paez